Spalding, J.
The defendants in this case are stockholders, :and, at the time the notes in question were issued, were directors and agents of the Cincinnati and Whitewater Canal Company.
This association was incorporated by an act of the general .assembly, passed April 1st, 1837, with full power to locate and •construct a navigable canal from some suitable point in the city of Cincinnati, along the valleys of the Ohio, Great Miami, and Whitewater rivers, to a junction with the Indiana Whitewater •canal, at or near the town of Harrison.
The charter confers ample powers upon the company for all purposes connected with the construction of their contemplated •canal, and for the protection of their works; but it nowhere authorizes the company to transact a banking business, or to issue bills of credit to circulate as money.
It appears that -in January, 1841, the company was in want of funds to pay the contractors upon their line of canal, and •the directors resolved that they would issue the notes of the company, for the purpose of liquidating the claims of such of .their creditors as might be willing to receive them. These *157 notes were carefully struck from engraved plates, upon banknote paper; were signed by the president, and countersigned by the secretary, and in all respects were made to resemble the bank-notes or bills then circulating as a currency in the com munity. They were evidently intended by the officers of the company, who directed their issue, to circulate as money, and they did in fact so circulate for more than a year.
The company, as such, is irresponsible. Many of its stock holders who were instrumental in creating this spurious currency have abundant means. The plaintiffs are endeavoring to obtain payment at their hands, and it is objected to a recovery that inasmuch as the notes are the notes of an incorporated company,, and as a legal liability exists against the company, the defendants are not holden in law for their payment.
I will confess that I have no veneration for corporate immunities.
Immense mischief has been done in the world under the supposed sanctity of corporations. The industry of our own country has been more severely taxed through the broken promises of worthless corporations, and the supposed exemption of its component members from an individual responsibility, than for all the expenses of the general and state governments.
I would, therefore, as one member of the court, feel prepared to say that the defendants were liable for the redemption of these notes, by the rules of the common law. True, they are individual members of a corporation; but it must be kept in view that they were incorporated to make canals — not to make paper money.
They can escape from pecuniary ■ responsibility by taking refuge behind their franchises only when found pursuing the-legitimate object for which those franchises were granted.
If they lose sight of the object for which they were incorporated and engage in other and different pursuits, they must do so under all the obligations and responsibilities of ordinary partners in business.
But the plaintiffs are not left to a doubtful remedy, in their *158 endeavors to enforce the individual liability of the shareholders in the Cincinnati and Whitewater Canal Company.
The action is predicated upon the provisions contained in the act passed January 27,1816, entitled “ an act to prohibit the issuing and circulating of unauthorized bank paper,” as amended by the act of March 18,1839.
The 11th section of the act of 1816, provides — “ That every stockholder, shareholder, or partner hereafter interested in any such bank, shall be jointly and severally answerable, in their individual capacity, for the whole amount of the bonds, bills, notes and contracts of such bank, hereafter executed; any agreement, shift or device in such bond, bill, note or contract to the contrary notwithstanding.”
And the 13th and 14th sections of the same act, read as follows : '
“ That the holder of any bond, bill, note or contract of such bank, may institute suit and recover judgment thereon against any part or the whale of the persons who were interested in such bank at the date of such bond, bill, note or contract, or who became interested in such bank at any time between that and the commencement of such suit.”
“ That in such suit it shall be sufficient for the plaintiff to set forth, in substance, that he is the holder of such bond, bill, note or contract; that the defendants were interested in said bank at the date of such bond, bill, note or contract, or subsequently thereto, and that it remains unpaid.”
This law was in full force in 1841, when the notes in question were issued by the company; and so was the act amendatory thereof, passed March 19, 1839, which provides, in sec. 1 — “ That every company or association, except a bank incorporated by a law of this state, that shall lend notes, bonds, bills, checks, orders, certificates of deposit or any other evidence of debt, and shall issue by their officer or officers, agents or any other person or persons, notes, bonds, bills, checks, orders, certificates of deposit or other evidence (of debt) payable to order and indorsed in blank, or payable to bearer, designed, calculated *159 or intended to circulate as money; or shall issue, put in ármir lation, or pay out for debts or property, with or without any such loan, any such notes, bonds, bills, checks, order, certificates of deposit, or other evidence of debt, or use other shift or device when by any such notes, etc., so issued, put in circulation or paid out by said company or association, or on their behalf, pass or circulate by delivery, shall be taken and deemed an unauthorized bank, within the meaning of the act to which this is an amendment.”
If there be any doubt remaining as to the question whether the Cincinnati and Whitewater Canal Company, by paying out said notes, brought itself within the operation of the act of 1816, that doubt will be put at rest when we advert to a decision of this court, made in the winter of 1841-2. Joseph Bonsal v. The State of Ohio, 11 Ohio Rep. 72. In that case Bonsai, the president of the company, was indicted for acting as “ an officer of an unauthorized bank,” in putting his signature to these very notes, in violation of the 3d section of said act; and the, judgment of the common pleas was affirmed, which imposed upon said Bonsai a penalty of one thousand dollars for acting as such officer. Indeed we consider that the decision of this court, in the case last cited, is decisive of the most prominent questions made in the one under consideration, if we except the plea of the statute of limitations.
It brings the compaiiy, as an unauthorized bank, within the meaning and influence of the act of 1816, which we feel disposed to construe with great liberality as an act designed to protect the community against the greatest of all frauds, that of a spurious and insecure currency.
It is contended by counsel for defendants, that the court of common pleas erred in admitting the notes in evidence at all, because they were the obligations of an incorporated company, and were obligatory on the company as such.
The corporation of which the defendants are members, is supposed to derive all its powers, immunities and privileges from the legislative act which created it; and so long as it confines *160 its operations within the sphere to which it is limited by that act of creation, it must be sued by its corporate name. The • same power which gave to it vitality, however, had also ordained that if any company, except an incorporated bank, shall issue, put in circulation, or pay out for debts, any notes designed to circulate as money, the stockholders thereof shall be jointly and severally answerable, in their individual capacity, for the whole amount of such notes, and the holder of such notes may institute suit and recover judgment thereon against any part or the whole of the persons interested in such company.
Unless we concede to members of a corporation immunities that will place them beyond the reach of legislative enactment, the notes were properly admitted in evidence against the defendants.
It matters not, in our opinion, whether the defendants attached their own or the name of the company to these written promises for the payment of money. By the force and effect of the existing law, all such promises emanating from an incorporated company, were deemed to be the promises of the indi vidual members of such company, and the “ assumpsit ” necessarily attached, on the part of the individual members, the instant the corporate body put the notes in circulation. It is further objected, that the plaintiffs offered no evidence on the trial to prove the indorsement of these notes. We hold that no such proof was necessary. The plaintiffs wefe holders of the notes, and if the jury found they were intended to circulate as cur rency, they wer e prima facie the owners thereof.
We are now brought to the consideration of that which counsel seems to regard as the chief ground of defense to this action.
It is argued with much confidence by counsel for defendants, and the cause has been argued with singular ability, that inasmuch as the liability is created by. statute, the claim of the plaintiffs falls within the bar imposed upon non-enumerated actions — that of four years. We have given to this objection all the consideration that its importance seemed to demand.
*161 If the act of incorporation of the Cincinnati and Whitewater Canal Company had contained the individual liability clause, it will not be pretended that a right of action against the defendants would be barrel in less time than fifteen years. Such is the recent decision in New York, made in the case of Corning and Horner, by McCullough. 1 Comstock, 47.
By the operation of a general law of our state, in force at the time, so soon as this company ventured to travel out of its charter and issue notes to circulate as money, the individual members of the company were, quo ad hoc, disrobed of their corporate mantle and placed in the condition of partners in trade, “ against any part or the whole ” of whom, the statute provides, suit may be brought. Their liability under such circumstances would be one arising ex contractu, and not a liability in the nature of a penalty imposed by the statute.
The demurrer to the defendants’ plea of the statute of limitations was therefore properly sustained.
We are satisfied with the instructions given to the jury on the trial. They really placed the liability of defendants on the ground that the notes were intended by them to circulate as currency. This was taking the most favorable view of their position, and they have no cause for complaint.

Judgment affirmed.